1

2

3

4

5

6                      UNITED STATES DISTRICT COURT

7                      EASTERN DISTRICT OF CALIFORNIA

8

9   JAIME BELTRAN,                          No.  1:15-cv-01858-DAD-SKO  HC

10                  Petitioner,             **FINDINGS AND RECOMMENDATION**
                                            **THAT THE COURT DENY PETITION**
11         v.                               **FOR WRIT OF HABEAS CORPUS**

12   WARREN L. MONTGOMERY, Warden,
     Calipatria State Prison,
13
                     Respondent.
14

15         Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus

16   pursuant to 28 U.S.C. § 2254, claims that insufficient evidence supported his conviction for first

17   degree murder.  Specifically, he contends that (1) the witness never identified him in court; (2) no

18   fingerprints were found on the murder weapon; (3) no gun residue was identified on Petitioner;

19
     and (4) no fingerprints were found on the shells.  The state court found that these claims lacked
20
     merit.  The undersigned agrees and recommends that the Court deny habeas relief.
21

22   **I.    Factual Background** [1]

23         On the day of the murder, the victim, Eduardo Diaz Reynoso, was drinking beer with

24   Santana Santos Garcia under a tree near a market.  A man approached with a gun, said "God,

25
     forgive me," and shot Reynoso multiple times.
26

27   _____

28   [1] The statement of facts reflects the factual summary set forth by the California Court of Appeal in *People v. Beltran*,
     2015 WL 7735648 (Cal.App. Dec. 1, 2015) (No. F069219) (reproduced at Lodged Doc. 1).

                                              1

1

2

3       At trial, Garcia would not identify Petitioner.  A difficult and emotional witness, he

4   testified that he focused on the end of the gun, not on the shooter's face.  He added that his

5   memory was poor because he was intoxicated at the time of the shooting.

6       Following the shooting, Garcia told Deputy Sheriff Thomas Edgar Grillione that the

7   shooter said "God, forgive me," before he shot Reynoso.  He also stated that the shooter knew a

    woman named Kathy, who worked in the discount store in Kerman.

8       In an interview on the afternoon of the shooting, Garcia told Deputy Sheriff Hector Palma,

9   the lead investigator, that he was under the tree near the market when the shooter approached,

10  carrying a shotgun.  The man asked Reynoso what he had been saying,[2] then shot him three times

11  before walking away.  The shooter drove away in a gold-colored car with a dent in the side.

12  Garcia later identified the car as a PT Cruiser.

13      Garcia had seen the shooter before.  Once, he saw the shooter driving a woman named

14  Katia in the gold PT cruiser. On another occasion, the shooter and Katia arrived in the same car at

15  a yard sale conducted by Reynoso and Garcia.  Garcia told Palma the name of the discount store

16  where Katia worked.

17      Garcia also told Palma that he thought the shooter was Alejandra Canzales' grandson.

18  Palma confirmed that Ms. Canzales is Petitioner's grandmother.

19

20      Palma testified that when Petitioner wore his long hair in a ponytail, he appeared to have

21  short hair.  Palma obtained two photographs of Petitioner.  Garcia was unable to identify

22  Petitioner in the first photo, in which his long hair hung free.  When Garcia saw the second photo,

23  in which Petitioner's hair was cut shorter, he began weeping and identified Petitioner as the man

24  who shot Reynoso.

25  ///

26

27

28

---

[2] Reynoso had apparently spoken openly about his disapproval of those who cultivated marijuana.

Palma interviewed Katia, who stated that she was Petitioner's sister.  When Palma asked where Petitioner was, Katia pointed to a gold PT cruiser that was then passing the discount store. Law enforcement personnel arrested Petitioner when he returned; Petitioner was the only person in the vehicle.  Deputies recovered a shotgun and Petitioner's shoes.

Autopsy results established that Reynoso was killed by two shotgun wounds, one in his head and one in his neck.  Shoe tracks at the scene were consistent with the shoes confiscated from Petitioner when he was arrested.  Shotgun shells recovered at the scene were shot from the shotgun recovered from Petitioner's vehicle.

II.   **Procedural Background**

Petitioner was charged with one count of first degree murder (Cal. Penal Code § 187(a)) with a sentence enhancement for personal discharge of a firearm in the victim's death (Cal. Penal Code § 12022.53(d)), and tried in Fresno County Superior Court in January 2014.  Petitioner executed a *Faretta*[3] waiver and represented himself.  In the course of the trial, he asked only a single question in cross-examination.

The jury found Petitioner guilty of the murder and found the sentencing enhancement to be true.  On February 14, 2014, the trial court sentenced Petitioner to an indeterminate term of fifty years to life in custody.

Petitioner's counsel filed a direct appeal pursuant to *People v. Wende*, 25 Cal.3d 436 (1979), in which she asserted that she was unable to identify any arguable issues for direct appeal. In a supplemental statement, Petitioner contended that insufficient evidence of his guilt had been presented to the trial court.  In an opinion dated December 4, 2015, the California Court of Appeal rejected Petitioner's argument as meritless.

///

---

[3] *Faretta v. California*, 422 U.S 806 (1975).

On December 11, 2015, Petitioner filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On January 11, 2016, Petitioner filed a petition for review by the California Supreme Court, which denied review on February 19, 2016.

**III.**     **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

///

///

4

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72.  The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable.  *Harrington*, 562 U.S. at 102.

///

IV.   **Due Process: Sufficiency of the Evidence**

Petitioner alleges a due process violation because the evidence adduced at trial was insufficient to convict him.  He contends that (1) the witness never identified him in court; (2) no fingerprints were found on the murder weapon; (3) no gun residue was identified on Petitioner; and (4) no fingerprints were found on the shells.

A.   **State Court Opinion**

The California Court of Appeals found Petitioner's claim lacked merit.[4]  Noting that Petitioner, who represented himself, failed to elicit the evidence that he claimed cast doubt on his guilt, the court wrote:

> The record conclusively establishes that Garcia was a reluctant and difficult witness who was saying anything in an attempt to avoid testifying at trial.  The trial court even noted that it was apparent Garcia was feigning lack of memory to avoid identifying [Petitioner] as the individual who shot Reynoso.  Garcia's feigned lack of memory permitted the prosecution to introduce his prior statements which positively identified [Petitioner] as the person who shot Reynoso, as well as Garcia's statements linking [Petitioner] to the vehicle, to his grandmother, and to his sister.  Video surveillance from the market did not show the shooting, but did show [Petitioner's] vehicle leaving the scene shortly after the shooting.  The shoe print impression evidence linked [Petitioner] to the scene, and the firearms examiner established conclusively that the shotgun used to kill Reynoso was the same shotgun found in [Petitioner's] vehicle hours after the murder.  This is overwhelming evidence of [Petitioner's] guilt.
>
> We note that no evidence was introduced to establish that, presumably, the gunshot revenue tests did not show any gunshot residue on [Petitioner] when he was arrested, or that, presumably, Garcia's description of the shotgun given to police differed from the shotgun found in [Petitioner's] possession.  This is evidence that would have been admissible and possibly helpful to [Petitioner], but he failed to elicit such testimony from the witnesses that testified.
>
> [Petitioner's] correspondence suggest that he believes a conviction was possible only if a witness, in this case Garcia, positively identified him at the perpetrator at trial.  This is incorrect.  The jury

---

[4] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

is instructed to review all of the evidence presented in deciding if the prosecution has proven a defendant's guilty [*sic*] beyond a reasonable doubt. (CALCRIM Nos. 101, 103, 3550.) We review the entire record, not just the testimony of a single witness, to determine if substantial evidence supports the verdict. (*People v. Hillhouse* (2002) 27 Cal. 4th 469, 496.) The entire record provided overwhelming evidence of Beltran's guilt.

*People v. Beltran*, 2015 WL 7735648 at *2-*3 (Cal.App. Dec. 1, 2015) (No. F069219) (reproduced at Lodged Doc. 1).

**B.   Standard of Review**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

**C.   Valid *Faretta* Waiver**

The California Court of Appeal determined that Petitioner, who represented himself at trial, validly waived his right to counsel under *Faretta v. California*, 422 U.S 806 (1975). Petitioner does not challenge the state court's conclusion.

**D.   Garcia's Failure to Identify Petitioner as Shooter**

Petitioner's first contention of insufficient evidence is Garcia's failure to identify him at trial. Garcia, a reluctant witness, testified, "I don't want to be here today. I don't want to have any problems with anybody. I don't have any type of problems." 5RT755. Garcia accused the

prosecutor of not caring about Garcia's feelings[5] and wanting to force him to relive Reynoso's death.  He also testified that he was drunk at the time of the shooting and that he did not recall the events.  On cross-examination, Petitioner asked Garcia if he had identified Petitioner as the shooter.  Garcia denied that he had identified Petitioner or anyone else.

The prosecution recalled Detective Hector Palma to testify about Garcia's statement following the shooting.  Petitioner did not object at any point during Palma's testimony.  After the jury had left the courtroom, the trial court set forth its conclusion that Garcia had had falsely professed a lack of recollection, allowing the prosecution to introduce Garcia's prior inconsistent statements under California Evidence Code §§ 1235 and 770.  Petitioner declined the trial court's invitation to add anything to the record.

Petitioner does not challenge the trial court's admission of Palma's testimony regarding Garcia's prior inconsistent statements, but simply assumes that Garcia's refusal to identify Petitioner in court was sufficient to conclude that Garcia had not identified Petitioner.  Petitioner's assumption is incorrect.

In evaluating the sufficiency of the evidence, the reviewing court must consider all evidence adduced at trial.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).  Evidence of Garcia's statements to investigators following the shooting fully supported the conclusion that Garcia had identified Petitioner as the shooter, even if he was unwilling to identify Petitioner at trial.

### E.   No Fingerprints on Shotgun or Shells, nor Gunshot Residue on Petitioner

In his second and fourth claims, Petitioner argues that the evidence was insufficient because his fingerprints were not found on the shotgun confiscated from his car or the shotgun shells recovered at the scene of the shooting.  In his third claim, Petitioner argues that the evidence was insufficient because testing revealed no gunshot residue on his person.

---

[5] Garcia and Reynoso had been close friends for 25 years.

Petitioner assumes that to convict him, the prosecution needed to introduce evidence of gunshot residue on Petitioner or fingerprints on the shotgun and shells.  This assumption is incorrect.

The measure of the sufficiency of the evidence is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  The state can prove that a defendant is guilty of a crime using various types of evidence so long as the evidence adduced at trial established the statutory elements of the crime.  To prove Petitioner guilty of murdering Reynoso, the prosecution was not required to show Petitioner's fingerprints on any piece(s) of evidence or to show that testing found gunshot residue on Petitioner.  It needed only to prove that Petitioner unlawfully killed Reynoso, a human being, with malice aforethought.  *See* Cal. Penal Code § 186(a).  The prosecution did so through evidence other than the fingerprints and gunshot residue.

Because the prosecution did not introduce fingerprint evidence or positive results of the gunshot residue test, Petitioner's conclusion that these items weighed in his favor likely is correct.  At trial, however, Petitioner did not raise the lack of fingerprints or gunshot residue in his own defense.

### F.   Sufficiency of the Evidence

The state court reasonably determined that, viewed as a whole, the evidence adduced at trial proved beyond a reasonable doubt that Petitioner murdered Reynoso.  Garcia's statements identified Petitioner as the shooter and identified the gold PT cruiser in which Petitioner arrived at and left the scene.  Although the security camera at the store did not capture the shooting itself, it showed Petitioner's car leaving the scene.  Expert testing indicated that the shotgun recovered from Petitioner's car fired the shells recovered from the scene.  The pattern of the

///

9

soles of Petitioner's shoes matched the shoeprints left at the scene.  Petitioner, representing

himself, provided no defense at trial.

## V.      Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a

district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a

certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255
> before a district judge, the final order shall be subject to review, on appeal, by
> the court of appeals for the circuit in which the proceeding is held.

> (b)  There shall be no right of appeal from a final order in a proceeding
> to test the validity of a warrant to remove to another district or place for
> commitment or trial a person charged with a criminal offense against the
> United States, or to test the validity of such person's detention pending
> removal proceedings.

> (c)    (1) Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of appeals from—

> (A)  the final order in a habeas corpus proceeding in which the
> detention complained of arises out of process issued by a State court; or

> (B)  the final order in a proceeding under section 2255.

> (2)  A certificate of appealability may issue under paragraph (1)
> only if the applicant has made a substantial showing of the denial of a
> constitutional right.

> (3)  The certificate of appealability under paragraph (1) shall
> indicate which specific issues or issues satisfy the showing required by
> paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability

"if jurists of reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

10

Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court should decline to issue a certificate of appealability.

**VI.    Conclusion**

The undersigned recommends that the Court deny with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **June 6, 2016**                    /s/ *Sheila K. Oberto*
                                             UNITED STATES MAGISTRATE JUDGE